**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Stella Weiskopf, ) | CIV 13-01979-PHX-MHB |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

Pending before the Court is Plaintiff Stella Weiskopf[1]'s appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On October 14, 2010, Plaintiff filed an application for disability insurance benefits and supplemental security income alleging disability beginning March 6, 2009. (Transcript of Administrative Record ("Tr.") at 172-186.) Plaintiff's claims were denied initially and on reconsideration. (Tr. at 100-107, 112-116.) Thereafter, Plaintiff requested a hearing before an administrative law judge, and a hearing was held on April 9, 2012. (Tr. at 15-39.) Afterwards, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. at 81-91.)

---

[1] Ms. Weiskopf is also known as Stella Keppler and Stella Keppler-Weiskopf.

The Appeals Council denied Plaintiff's request for review, (Tr. at 1-5), making the ALJ's decision the final decision of the Commissioner. This appeal followed.

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

  (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

  (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

  (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). The Commission must consider claimant's residual functional capacity and vocational factors such as age, education, and past work experience. Id.

  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 6, 2009 – the alleged onset date. (Tr. at 83.) At step two, she found that Plaintiff had the following severe impairments: chronic migraine headaches, chronic pain, depression and anxiety. (Tr. at 83.)

  At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 84.) After consideration of the entire record, the ALJ found that Plaintiff -

  has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. The claimant needs to avoid concentrated exposure to moving machinery and unprotected heights. In addition, the claimant is limited to simple, unskilled work.

(Tr. at 85.)

  The ALJ determined that Plaintiff was unable to perform any past relevant work, as her past work as a bartender, office manager and production evaluator, that was semi-skilled in nature and was sedentary, light and heavy in exertion[2]. (Tr. at 89.) The ALJ determined

---

[2]Sedentary work involves minimal physical exertion, such as lifting no more than 10 pounds; occasionally lifting or carrying small articles like docket files, etc.; and primarily

- 3 -

that, "considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. at 89.)

Therefore, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 6, 2009, through the date of her decision. (Tr. at 89.)

## IV.  DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh treating physician opinions, and (2) improperly discrediting Plaintiff's testimony and the observations of her husband Jason Weiskopf. (Doc. 20.)[3] Plaintiff requests that the Court remand for determination of benefits.

**A.     Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ erred by rejecting the opinions of Plaintiff's treating physicians Drs. Sahai and Qureshi, and treating physician assistant David Scholzen. (Doc. 18, at 1-4.)

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to "substantial weight." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v.

---

sitting. See 20 C.F.R. §404.1567(a).

[3]This Court also considers Plaintiff's Reply (Doc. 31), and Notice of Supplemental Authority (Doc. 24).

- 4 -

1 Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given
2 controlling weight when it is "well-supported by medically accepted clinical and laboratory
3 diagnostic techniques and is not inconsistent with the other substantial evidence in [the
4 claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating
5 physician's opinion "is not well-supported" or "is inconsistent with other substantial
6 evidence in the record," then it should not be given controlling weight. Orn v. Astrue, 495
7 F.3d 624, 631 (9th Cir. 2007) (citation omitted).

8       The ALJ found that the opinions of treating physicians Drs. Sahai and Qureshi, and
9 physician's assistant Mr. Scholzen were not well-supported and inconsistent with other
10 substantial evidence in the record, and therefore did not give them controlling weight.

11       The ALJ noted that Dr. Qureshi, a neurologist examined Plaintiff on December 6,
12 2011, and "diagnosed chronic migraine without aura, without mention of intractable
13 migraine, without mention of status migrainosus," and that the examination was "within
14 normal limits." (Tr. at 88.) Dr. Qureshi completed a medical source statement on March 26,
15 2012, "with regard to [Plaintiff]'s headaches," and opined that Plaintiff had "moderate
16 restrictions of activities involving exposure to marked changes in temperature/humidity,
17 driving automotive equipment, and exposure to dust, fumes and gases." (Tr. at 88, 484-85.)
18 The ALJ found that the moderate limitations identified by Dr. Qureshi would not preclude
19 the performance of all work related activities, and that Dr. Qureshi's findings regarding the
20 frequency and duration of Plaintiff's headaches appeared from his medical reports to be
21 based on Plaintiff's subjective reports. (Tr. at 88.)

22       The ALJ considered the medical records of Dr. Eric Eross, a neurologist, who also
23 examined Plaintiff for her reported chronic headaches. (Tr. at 86.) An examination by Dr.
24 Eross on March 24, 2009, revealed "no neurological deficits, 2/4 deep tendon reflexes, 5/5
25 muscle strength in the upper and lower extremities, intact temperature and vibratory
26 sensation in all extremities, normal gait and station, and normal coordination." (Tr. at 86.)
27 The ALJ referred additionally to Dr. Eross's report that Plaintiff had "normal cervical range
28 of motion without tenderness to palpation of the paraspinal musculature, but musculature,

1 but marked tenderness to palpation over the left and right greater occipital nerves," and
2 diagnosed "chronic migraine, medication overuse headache and occipital neuralgia," and
3 recommended bilateral occipital nerve blocks and Botox/chemodenervation. (Tr. at 86.) The
4 ALJ noted that on April 21, 2009, Plaintiff reported to Dr. Eross a "90 percent improvement
5 in her overall headache condition," and that she was "side effect free and doing quite well."
6 (Tr. at 86.)

7 Plaintiff also was treated by another neurologist, Dr. Sivakumar, who examined
8 Plaintiff on April 6, 2010, who noted the examination was within normal limits, and
9 diagnosed "diffuse pain syndrome, no cause identified and negative inflammatory markers."
10 (Tr. at 87.) Dr. Sivakumar was unable to come up with a diagnosis for Plaintiff's subjective
11 complaints. (Tr. at 87.) The ALJ noted that a subsequent MRI of Plaintiff's brain on April
12 30, 2010, ordered by another treating physician, Dr. Hoag, was unremarkable. (Tr. at 87.)

13 On November 10, 2010, Dr. Hoag's physicians assistant D. Todd Scholzen, completed
14 a medical source statement in which he opined that Plaintiff was capable of less than a full
15 range of sedentary work, and that she was unable to sustain work on a regular and consistent
16 basis. (Tr. at 87.) The ALJ did not give persuasive weight to Mr. Scholzen's opinion, for
17 the reason that a physician's assistant is not an "acceptable medical source," and that his
18 opinions are considered "other evidence." (Tr. at 87.) The ALJ also discounted Mr.
19 Scholzen's opinion, noting that there were only two treatment records signed by Mr.
20 Scholzen: the first on June 24, 2010, when Mr. Scholzen diagnosed upper respiratory
21 infection and anxiety disorders, and no other remarkable objective findings; and the second
22 on November 10, 2010, the date of the medical source statement (Mr. Scholzen did not
23 complete a physical examination of Plaintiff on that date of the statement). (Tr. at 87.)

24 The ALJ also reviewed the medical records of Dr. Sahai, a pain management
25 specialist, who diagnosed Plaintiff with chronic pain syndrome, thoracic or lumbosacral
26 neuritis/radiculitis, unspecified, headache, and lumbago. (Tr. at 87.) Dr. Sahai completed
27 a medical source statement on April 6, 2012, in which he opined that Plaintiff is unable to
28 perform even sedentary work activity on a regular and sustained basis. (Tr. at 87.) The ALJ

1  gave little weight to this opinion, finding that Dr. Sahai's own medical records do not support
2  this extreme limitation.  On July 25, 2011, Dr. Sahai noted that Plaintiff had a "non-antalgic
3  gate, was independent in all transfers, [and] ambulated without an assistive device." (Tr. at
4  87.)  He also noted that Plaintiff had "full range of motion in extension, ... tenderness to
5  palpation along the lumbar paraspinal muscles, pain with facet loading, axial back pain with
6  seated straight leg raise, [] negative Faber's maneuver, ...[m]uscle testing was 5/5, sensation
7  was intact, and deep tendon reflexes were symmetric." (Tr. at 87.)  The ALJ noted that
8  additional examinations by Dr. Sahai revealed similar findings. (Tr. at 87.)  Also, Plaintiff
9  had reported to Dr. Sahai on March 23, 2012 that she was still having some residual low back
10 pain, but her leg pain was "much improved," and that she reported "greater than 80 percent
11 relief from the [epidural steroid injections]," ... and that the drug Tizandidine was "managing
12 her breakthrough pain not relieved by morphine." (Tr. at 87.)

13       The ALJ gave specific reasons why Dr. Sahai's opinion was not well-supported by
14 his own records and is inconsistent with other substantial evidence in the record.  The ALJ
15 also discussed psychiatric medical reports which noted that, on October 12, 2011, Plaintiff
16 was "alert and oriented, eye contact was good, motor activity was normal, affect was
17 appropriate, and mood was anxious and depressed, that Plaintiff's speech was normal,
18 thought processes were logical, concentration was fair, and insight and judgment were good."
19 (Tr. at 88.)  The evaluating source on that date opined that Plaintiff's "global assessment of
20 functioning (GAF) was 55, suggestive of moderate symptoms, or moderate difficulty in
21 maintaining social and occupational functioning." (Tr. at 88.)  Progress reports on December
22 19, 2011, and on February 18, 2012, noted that Plaintiff had reported that her mood was
23 calmer, and she was "coping better and was less anxious," that she was coping "well," and
24 that the mental status examination was within normal limits. (Tr. at 88.)  The ALJ noted that
25 the evaluating source opined that Plaintiff had improved overall.

26       Finally, the ALJ considered the opinions of the state agency's reviewing physicians
27 and disagreed with their conclusion that Plaintiff's impairments are non-severe, noting that
28 additional medical records obtained after those opinions were formulated demonstrate that

1 Plaintiff does have restrictions resulting from her severe determinable impairments. (Tr. at
2 89.) The ALJ agreed, however, that there opinions are consistent with the ALJ's
3 determination that Plaintiff's impairments do not prevent the performance of basic work
4 functions. (Tr. at 89.)

5 The ALJ conducted an exhausted review of the hundreds of pages of medical records
6 in reaching her decision. Historically, the courts have recognized the following as specific,
7 legitimate reasons for disregarding a treating or examining physician's opinion: conflicting
8 medical evidence; the absence of regular medical treatment during the alleged period of
9 disability; the lack of medical support for doctors' reports based substantially on a claimant's
10 subjective complaints of pain; and medical opinions that are brief, conclusory, and
11 inadequately supported my medical evidence. See. e.g., Bayliss v. Barnhart, 427 F.3d 1211,
12 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64
13 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ is "entitled to
14 draw inferences logically flowing from the evidence" and "need not substitute the judgment
15 of expert witnesses for [her] own." See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.
16 1982).

17 The Court finds that the ALJ properly weighed the medical source opinion evidence,
18 and gave specific and legitimate reasons, based on substantial evidence in the record, for
19 discounting the physicians and evidence which Plaintiff relies upon in her brief. The ALJ
20 noted that Dr. Qureshi only reported moderate limitations, and discredited Dr. Sahai's
21 assessments due to inconsistencies with Plaintiff's treatment record and the medical evidence
22 as a whole. The ALJ also found that the opinions were conclusory, lacked supporting
23 clinical findings, and were based in part on Plaintiff's own subjective complaints. See, e.g.,
24 Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the incongruity between
25 doctor's questionnaire responses and her medical records provides a specific and legitimate
26 reason for rejecting the opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We
27 hold that the ALJ properly found that [the physician's] extensive conclusions regarding [the
28 claimant's] limitations are not supported by his own treatment notes. Nowhere do his notes

1 indicate reasons why [the physician would limit the claimant to a particular level of
2 exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ
3 properly rejected a physician's testimony because "it was unsupported by rationale or
4 treatment notes, and offered no objective medical findings to support the existence of [the
5 claimant's] alleged conditions"); Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602
6 (9th Cir. 1999) (citing Fair, 885 F.2d at 605) (an ALJ may reject a treating physician's
7 opinion if it is based "to a large extent" on a claimant's self-reports that have been properly
8 discounted as incredible). The ALJ also properly discounted the opinion of physician's
9 assistant Mr. Scholzen, giving specific and legitimate reasons for doing so. Therefore, the
10 Court finds no error.

11 **B.     Plaintiff's Subjective Complaints.**

12      Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the
13 absence of clear and convincing reasons for doing so.

14      If there is no evidence of malingering, "the ALJ can reject the claimant's testimony
15 about the severity of her symptoms only by offering specific, clear and convincing reasons
16 for doing so." Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations
17 omitted). The ALJ must identify "what testimony is not credible and what evidence
18 undermines the claimant's complaints." See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.
19 2007) (quoting Lester, 81 F.3d at 834).

20      In weighing a claimant's credibility, the ALJ may consider many factors, including,
21 "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,
22 prior inconsistent statements concerning the symptoms, and other testimony by the claimant
23 that appears less than candid; (2) unexplained or inadequately explained failure to seek
24 treatment or to follow a prescribed course of treatment; and (3) the claimant's daily
25 activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495

1  F.3d 625, 637-39 (9th Cir. 2007).[4]  The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ."  Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff was represented by counsel at the 2012 administrative hearing.  (Tr. at 17.)  She testified that she has chronic pain that can result in her being unable to move her extremities, that she experiences sharp hip pain and is in bed a lot.  (Tr. at 22-23.)  She testified that she gets injections in her back that hasn't helped.  (Tr. at 23.)  She also asserted that she gets migraines about 3 or 4 times a week and has to lay in bed 4-5 hours if she doesn't take the medication soon enough.  (Tr. at 25.)  Plaintiff testified that she sleeps anywhere from 18 to 20 hours per day and that she takes 4 hour naps one or two times a day, that she puts dishes in the dishwasher, does some laundry, prepares microwave meals and makes sure the dog has water.  (Tr. at 25-26.)  Plaintiff testified that she can sit 20-25 minutes and stand about 5 minutes, because her feet and legs will start to hurt, and that she can walk a very short distance and would probably have to stop and rest to walk half of a block.  (Tr. at 27.)  She reported her pain level as 8 out of 10 with medications, and that she averages 6-7 panic attacks per month.  (Tr. at 29.)  She also claimed that she doesn't drive.  (Tr. at 30.)  Plaintiff also testified that she gets drowsy and has memory problems.  (Id. at 31.)

In function reports, Plaintiff asserted that she is significantly limited in daily living activities, and that she requires assistance attending to her personal care, takes her children

---

[4] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting.  See Fair, 885 F.2d at 603.  The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.  See id.

- 10 -

1   to school, folds clothes a couple times a week, shops for personal items two or three times
2   a year, and drives a car, but does not prepare any meals or perform any other household
3   chores.  (Tr. at 84.)  The ALJ noted however, that Plaintiff reported to a treating source that
4   she home-schooled her youngest child, which was inconsistent with Plaintiff's assertions that
5   depression interferes with her ability to concentrate, and that Plaintiff stated to a treating
6   mental health professional that she took care of her dogs, watered the lawn, swept the floor
7   and did laundry.  (Tr. at 84, 88.)  Although Plaintiff reported sleep disturbances, she
8   subsequently reported that she was sleeping all night.  (Tr. at 88.)  Although Plaintiff
9   reported mild difficulties in maintaining social functioning, the ALJ noted she reported that
10  she has no problems getting along with family, friends, neighbors, or others, and that records
11  from Plaintiff's treating sources disclose that Plaintiff is adequately groomed, interacts
12  pleasantly, and has good eye contact.  (Tr. at 84.)

13  Although Plaintiff reported moderate difficulties with concentration, persistence or
14  pace, she reported just short-term memory loss during an initial psychiatric evaluation on
15  October 12, 2011, and mental status examinations revealed that Plaintiff had fair
16  concentration, and at times, fair judgment and insight.  (Tr. at 84.)   The ALJ noted that,
17  although Plaintiff testified she had drowsiness and memory problems as side effects from her
18  medication, the ALJ found that the record did not establish adverse effects of such severity
19  as to prevent the performance of work related activities.  (Tr. at 89.)  The ALJ also noted that
20  neurological findings by Plaintiff's treating sources reveal that Plaintiff "is oriented, memory
21  is intact, attention span and concentration are normal, and comprehension and language are
22  intact."

23  With respect to Plaintiff's reported back pain, the ALJ noted that "physical
24  examinations are essentially benign with regard to [Plaintiff]'s back impairment, and there
25  is no radiological evidence supporting [Plaintiff]'s allegations of severe back pain." (Tr. at
26  88.)  Also, the epidural injections were noted to have provided substantial improvement in
27  Plaintiff's reported leg pain.  (Tr. at 88.)  The ALJ also considered the medical evidence, as
28

- 11 -

1  discussed above, in reaching her finding that the functional limitations resulting from
2  Plaintiff's impairments are less serious than she has alleged. (Tr. at 86.)

3  Having reviewed the record, the Court finds that the ALJ identified several clear and
4  convincing reasons supported by the record for discounting Plaintiff's statements regarding
5  the severity of her limitations. While perhaps the individual factors, viewed in isolation, are
6  not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor is
7  relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors that
8  led to the ALJ's decision.  The Court concludes that the ALJ has supported her decision to
9  discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore, the
10 Court finds no error.

11 **C.     Third-Party Lay Witness - Plaintiff's Husband Jason Weiskopf.**

12 In determining whether a claimant is disabled, an ALJ must consider lay witness
13 testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113,
14 1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.
15 2006)).  An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557
16 F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so
17 only upon providing specific reasons that are "germane to each witness." Id. (quoting
18 Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054.  When an ALJ errs in failing "to
19 properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot
20 consider the error harmless unless it can confidently conclude that no reasonable ALJ, when
21 fully crediting the testimony, could have reached a different disability determination." Stout,
22 454 F.3d at 1056.

23 Here, the ALJ considered the third-party statements made by Plaintiff's husband Jason
24 Weiskopf in a third-party function report completed on December 31, 2010, and found that
25 the statements failed to establish disability. (Tr. at 89.) In reaching this conclusion, the ALJ
26 determined that, like Plaintiff's own statements, her husband's statements did not undermine
27 the objective medical evidence, analyzed extensively by the ALJ, that established that
28 Plaintiff's impairments, "although imposing some limitations, do not prevent her from

1  engaging in all basic work functions." (Tr. at 21.)  See Bayliss, 427 F.3d at 1218 (affirming
2  rejection of lay witness testimony that was inconsistent with claimant's daily activities and
3  objective medical evidence); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th
4  Cir. 2009) (where lay witness testimony was similar to the claimant's own complaints, which
5  the ALJ had discredited for clear and convincing reasons, it followed that the ALJ also gave
6  germane reasons for rejecting the lay testimony).  Accordingly, the Court finds that the ALJ
7  properly considered the third-party statement set forth in the record and appropriately
8  disregarded the statement by providing a "specific, germane reason."

9       Even if there was a failure to properly discuss the third-party statement, the Court
10 concludes that no reasonable ALJ, even if fully crediting the statement, could have reached
11 a different disability determination.  The limitations and symptoms contained in the third-
12 party statement are entirely similar to and consistent with, those which Plaintiff described in
13 her own testimony.  As a result, because this Court concludes that the ALJ's decision to
14 discredit Plaintiff's testimony was supported by substantial evidence, and because the third-
15 party statement was consistent with Plaintiff's testimony, it was reasonable for an ALJ to
16 disregard that statement as well.

17 **D.     Conclusion**

18      The Court notes that Defendant concedes in its Response that "both parties can point
19 to some favorable evidence, and both parties can outline a reasonable interpretation of the
20 evidence that can support her position." (Doc. 23, at 9.)  Defendant asserts however, that
21 despite Plaintiff's ability to outline one interpretation of the evidence, the ALJ's decision
22 must be upheld as it is "supported by another rational interpretation of the evidence." (Id.)
23 (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("If evidence is susceptible of
24 more than one rational interpretation, the decision of the ALJ must be upheld.")); accord
25 Reddick, 157 F.3d at 720-21; see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th
26 Cir. 2006).  The ALJ's decision was supported by a rational interpretation of the evidence
27 considered.

28

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits and supplemental social security income in this case. Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 20th day of March, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge